**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 24-77-DLB**

**PERRY LEE WHATLEY**                                                      **PLAINTIFF**

**v.**                 **MEMORANDUM OPINION AND ORDER**

**KATHLEEN LAPE, et al.**                                           **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

Perry Lee Whatley is a pretrial detainee confined at the Kenton County Detention Center ("KCDC") in Covington, Kentucky. Whatley has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. # 1). The Court has granted his motion to proceed *in forma pauperis* by separate Order. (Doc. # 6). This matter is before the Court to conduct the initial screening required by 28 U.S.C. §§ 1915(e)(2), 1915A. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).

Whatley is the defendant in three criminal proceedings currently pending in the Circuit Court of Kenton County, Kentucky. He is charged with: (1) drug possession and evidence tampering in *Commonwealth v. Whatley*, No. 18-CR-00035 (Kenton Cir. Ct. 2018); (2) bail jumping in *Commonwealth v. Whatley*, No. 21-CR-00063 (Kenton Cir. Ct. 2018); and (3) bail jumping in *Commonwealth v. Whatley*, No. 24-CR-00109 (Kenton Cir. Ct. 2018). Whatley's Complaint is focused upon events occurring during these criminal prosecutions and his recent incarceration.

At the outset, the Court addresses two preliminary matters. First, interspersed throughout Whatley's Complaint are assertions couched in legalistic commercial and

1

corporate terms, the kind often seen in proclamations filed by members of various "sovereign citizen" movements. *Cf.* (Doc. # 1 at 7) (asserting that the criminal charges against him are "commercial crimes and apply to the strawman / *Ens Legis* / Artificial Person all caps (PERRY LEE WHATLEY) and could be discharged to the *cestui qui vie* trust account**!**")). Such theories are palpably at odds with accepted principles of American jurisprudence and are thus "totally implausible" and "insubstantial" to invoke this Court's subject matter jurisdiction. *See El Ameen v. Stumpf*, 825 F. Supp. 2d 537 (D.N.J. 2011); *United States v. James*, 328 F. 3d 953 (7th Cir. 2003). The Court considers such statements only to the extent that they amount to factual allegations rather than misguided assertions of law.

Second, plaintiff identifies himself as "Pairi Omari Will El Ray," a moniker he claims pursuant to "my Tribal Court ordered name correction." *See* (Doc. # 1 at 1, 3). Whatley has attached to his Complaint various papers which vaguely mimic government-issued documents in support of that assertion. *Cf.* (Doc. # 1-1 at 37-40 (document titled "Aboriginal Republic – Indigenous Political Authority Xi-Amaru Tribal Government© Affidavit & Notice of Fraudulent Negotiable Instrument [Birth Certificate] & Cancellation/Rescission of any and all Endorsements" (Doc #1-1 at 45), an identification card titled "International Tribal Traveler Identification – Morrocan (*sic*) National / Allodial National"). The creation of such documents by the "sovereign citizen" him or herself is a hallmark of this belief system. *Cf. Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241, 249 (D.N.J. 2011) (noting the plaintiffs' inclusion of "hundreds of pages of homemade quasi-documents, bearing such titles as 'records certifications by body custodian,' 'trademark notices,' 'verified declarations in the nature of an affidavit of

2

truth in commerce, and contract for waiver of tort/trademark notice/affidavit of fact,' 'All Rights to Travel Reserved,' 'criminal complaint warrants,' . . . .").

Whatley has not demonstrated either that these organizations actually exist or that they have legal authority to effect a valid name change.  *See Lankford v. Wells Fargo Home Mortg.*, No. 3:20-MC-00001, 2020 WL 2183001, at *2 (S.D. Ohio May 6, 2020) (noting that the submission of pseudo-official documents created by the plaintiff himself "aligns with the types of chicanery offered by so-called sovereign citizens – 'persons who through name changes and pseudo-legal documents consider and declare themselves to be free from obligations such as federal income taxes, state registration requirements, and private contracts.'") (quoting *El Bey v. Bank of America, N.A.*, 2014 WL 517491, at *6 (E.D. Mich. 2014) (citation omitted), *report and recommendation adopted,* No. 3:20-MC-00001, 2020 WL 6828223 (S.D. Ohio Nov. 20, 2020).  And the Court need not accept as true "allegations that are sufficiently fantastic to deny reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1959 (2009) (Souter, J., dissenting).  The Court will therefore retain and use the plaintiff's legal name, Perry Lee Whatley, in this matter.  That is the name used in official court records maintained by the Kenton Circuit Court and by KCDC.  In any event, use of Whatley's actual legal name is a practical necessity: KCDC would likely return as undeliverable correspondence sent by the Court using anything other than his legal name, putting Whatley's complaint at risk of dismissal for failure to prosecute.  *See El-Bey v. Sylvester*, No. 1:21-CV-680, 2022 WL 4273172, at *2-4 (S.D. Ohio Sept. 15, 2022).

Preliminary matters addressed, the Court reviews Whatley's Complaint.[1] Summarized, Whatley asserts that as a result of events occurring over a seven-year span (beginning in October 2017 and continuing through the present day), twelve different defendants violated four Articles and seven Amendments to the Constitution of the United States; 42 U.S.C. §§ 1983, 1985, 1986; ten Articles of the "UN Rights of Indigenous Peoples"; thirteen articles of the Universal Declaration of Human Rights; two sections of the Uniform Commercial Code; one federal regulation, eleven federal criminal statutes; the Expatriation Act of 1868, the "Clearfield doctrine"; "HJR 192"; and two American Indian treaties: the Treaty of Washington of 1866 and the Treaty of Camp Holmes. Whatley seeks from the Defendants unquantified compensation and a written apology, as well as a "Writ of Prohibition and Habeas Corpus", the nature of which he does not specify.

A Complaint such as this, "one that includes every possible cause of action remotely relevant under the facts of the case, omitting only the proverbial kitchen sink," often leaves the Court with "a creeping suspicion (eventually borne out by the evidence) that the [complainant] relies on many arguments because they lack faith in any of them." *Chrysler Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C 5273, 1995 WL 493436, at *1 (N.D. Ill. Aug. 15, 1995). Having navigated Whatley's labyrinthine pleading, the Court will dismiss Whatley's claims against all but one defendant, most of them with prejudice but

---

[1] Whatley recently attempted to amend his Complaint by sending a letter containing new allegations to the Clerk of the Court. *See* (Doc. # 7). A complaint cannot be amended in this manner, so the Court will disregard this and similar submissions. *See Lewis v. Sessions*, No. 17-5475, 2017 WL 7313822, at *6 (D.N.J. Nov. 3, 2017) ("Neither Fed. R. Civ. P. 8, which governs pleadings, nor Fed. R. Civ. P. 15, which governs amended and supplemental pleadings, permits [a plaintiff] to submit numerous addenda to his Complaint in this piecemeal fashion.").

some without.  To facilitate a clearer discussion, the Court addresses his claims and requests for relief in roughly reverse order.

First, the Court will deny Whatley's requests for a "Writ of Prohibition" and a "Writ of Habeas Corpus."  Whatley's request for habeas relief cannot be combined in a single action with his civil claims.  *Cf. Ruff v. Braylock*, No. 1:08CV101-D-D, 2009 WL 666365, at *1 (N.D. Miss. Mar. 10, 2009) ("Ruff may not combine a habeas and a § 1983 claim in one action."); *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987) ("In instances in which a petition combines claims that should be asserted in habeas with claims that properly may be pursued as an initial matter under § 1983, and the claims can be separated, federal courts should do so, entertaining the § 1983 claims.").  And, in any event, Whatley does not indicate that he has exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1).

The Court also may not issue a "writ of prohibition" directing the state court to cease its criminal prosecution of Whatley.  *See In re Wallace*, 405 F. App'x 582, 583 (3d Cir. 2011).  After all, state and federal courts are of equal dignity, so the Kenton Circuit Court is not "subordinate" to this one.  *See Siler v. Storey*, 587 F. Supp. 986, 987 (N.D. Tex. 1984) ("Writs of prohibition traditionally have been used by appellate courts to exert their revisory powers over inferior courts, but it is not an appropriate remedy to control jurisdiction of other, nonsubordinate courts.").  And such an action is prohibited by the Anti-Injunction Act of 1948.  *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.").

The Expatriation Act of 1868 also provides no basis for relief to Whatley because it "does not provide rights to someone who has renounced his United States citizenship; rather it is intended to provide protections for naturalized American citizens abroad." *Klaudt v. Dooley*, No. CIV 10-4091-KES, 2010 WL 5391571, at *4 (D.S.D. Dec. 22, 2010). His references to the Treaty of Washington of 1866 and the Treaty of Camp Holmes of 1835 are likewise insufficient to state a claim because Whatley makes no effort to explain their application to either himself or to the facts he alleges. *Cf. Choice v. Deutsche Bank Nat. Tr. Co.*, No. 13-CV-1519-H, 2013 WL 4506146, at *1 (S.D. Tex. Aug. 22, 2013); *Bey v. Does*, No. 4:17-CV-2186, 2018 WL 11462343, at *1 (N.D. Ohio Feb. 28, 2018).

Whatley's invocation of "HJR 192," which the Court assumes refers to House Joint Resolution 192, fares no better. The Resolution, titled "To assure uniform value to the coins and currencies of the United States," provides that obligations requiring payment "in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby" are against public policy, and that United States currency is a valid legal tender for all debts. *See* H.J.R. Res. 192, 73d Cong. (1933). The Resolution, the tenth of the 73rd Congress, became Public Law 73-10 and suspended the gold standard in the United States. Public Law 73-10 undergirds one sub-species of sovereign citizen theory, but courts have consistently rejected claims predicated upon it. *Cf. McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 211-14 (D. Conn. 2010) (collecting cases).

Whatley's unexplained reference to "the Clearfield doctrine" presumably harkens back to the Supreme Court's decision in *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943), a commercial paper case where it was held that a negotiable instrument

6

issued by a federal instrumentality is governed by federal law. *Clearfield* is a choice-of-law case, and courts have consistently rejected attempts to use that decision as a basis either for the assertion of a substantive civil claim or as a ground to dismiss criminal charges. *Cf. United States v. Campbell*, No. 6:21-CR-00121-003, 2024 WL 1962899, at *4 (S.D. Tex. May 2, 2024); *United States v. Focia*, No. 2:15CR17-MHT, 2015 WL 1539771, at *1, n.3 (M.D. Ala. Apr. 6, 2015).

The Court will also dismiss claims predicated upon legal sources identified by Whatley which are merely definitional or purposive because they neither create enforceable rights nor proscribe conduct. These include two provisions of the Uniform Commercial Code which, as a Uniform Law, is not positive law. The first, Section 1-308, states only that a party can provide a performance under a reservation of rights. The second, Section "1-103.6", simply does not exist. In any event, Section 103 is merely a general statement of the UCC's purpose. Whatley also references 27 C.F.R. 72.11, but that is merely a definitional section promulgated by the Bureau of Alcohol, Tobacco, and Firearms. Similarly, 8 U.S.C. § 1408 defines those persons who, upon birth, are considered nationals of the United States rather than citizens. Nothing in Whatley's Complaint suggests, let alone affirmatively indicates, the relevance of these provisions to his ongoing criminal prosecution.

Whatley also references eleven provisions of Titles 10 and 18 of the United States Code. But these are criminal statutes, not civil ones. A private citizen lacks standing to assert a civil claim either directly under a criminal statute or predicated upon an asserted violation of it. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The decision to prosecute is vested in the sound discretion of the Attorney General, *see Wayte v. United*

7

*States*, 470 U.S. 598, 607 (1985), and there is no implied private right of action to enforce any of the statutes Whatley references.[2] These claims will be dismissed with prejudice for lack of standing.

Likewise, Whatley lacks standing to assert any claim under either the Universal Declaration of Human Rights, *see Konar v. Illinois*, 327 F. App'x 638, 640 (7th Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)), or the United Nations Universal Declaration on the Rights of Indigenous People Act, *see Bey v. Ohio*, No. 1:11-CV-1048, 2011 WL 4007719, at *2 (N.D. Ohio Sept. 9, 2011); *Bey v. New York*, No. 11-CV-3296(JS)(WDW), 2012 WL 4370272, at *7 (E.D.N.Y. Sept. 21, 2012); *Joyner-El v. Giammarella*, No. 09CIV3731(NRB), 2010 WL 1685957, at 3 n.4 (S.D.N.Y. Apr. 15, 2010). These claims will also be dismissed with prejudice for lack of standing.

---

[2] *See Kafele v. Frank & Wooldrige Co.*, 108 F. App'x 307 (6th Cir. 2004) (finding no private right of action to assert a claim under 18 U.S.C. §§ 241, 242); *MacLeod v. Moritz*, No. 18-CV-11653, 2019 WL 3072098, at *4 (E.D. Mich. July 15, 2019) (same for 18 U.S.C. § 247), *aff'd*, No. 19-1887, 2020 WL 4590115 (6th Cir. Apr. 15, 2020); *Ellerbe v. Mayor of Philadelphia*, No. CV 19-2716, 2019 WL 2866085, at *2 (E.D. Pa. July 3, 2019) (same); *Malloy v. Watchtower Bible and Tract Society*, No. 18-1041, 2019 WL 190344, at *1 (6th Cir. 2019) (same for 18 U.S.C. § 1201); *Monroe v. McNairy Cnty., Tenn.*, 850 F. Supp. 2d 848, 876 (W.D. Tenn. 2012) (same); *Dunn v. Moll*, No. 22-35545, 2024 WL 813470, at *1 (9th Cir. Feb. 27, 2024) (same for 18 U.S.C. § 2071); *Doss v. Beshear*, No. CV 15-83-GFVT, 2016 WL 2990748, at *2 n.2 (E.D. Ky. May 20, 2016) (same for 18 U.S.C. § 2071 or § 2076); *Ongori v. Golden*, No. 16-2788, 2017 WL 6759114, at *2 (6th Cir. Nov. 15, 2017) (same for 18 U.S.C. § 2076); *Reade v. Galvin*, No. CV 21-10064-FDS, 2021 WL 327474, at *2 (D. Mass. Feb. 1, 2021) (same for 18 U.S.C. § 2382); *Nguyen v. Ridgewood Sav. Bank*, No. 14-cv-1058, 2015 WL 2354308, at *13 (E.D.N.Y. May 15, 2015) (same); *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 162 (D.D.C. 1976) (same for 18 U.S.C. § 1702); *Mason-Ramsey v. Ramsey*, No. 22-CV-1257-PKC-VMS, 2023 WL 4665795, at *2 (E.D.N.Y. July 20, 2023) (same); *Whatley v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992) (same for 18 U.S.C. § 1703); *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1268 (M.D. Fla. 2008) (same for 18 U.S.C. § 1705); *Bullis v. Kullman*, No. 2:19-CV-11724, 2019 WL 2743395, at *3 (E.D. Mich. July 1, 2019) (same for 18 U.S.C. §§ 1702, 1703, 1705, 1706) (collecting cases).

The same is also true for 10 U.S.C. § 925, a provision of the Uniform Code of Military Justice ("UCMJ") that criminalizes kidnapping. Only courts-martial have jurisdiction over such offenses, and only a person subject to the UCMJ may prefer charges. *See* Manual for Courts-Martial, Pt. II, §§ 203, 307(a) (2019). Whatley does not allege facts indicating that he is subject to the UCMJ. *See* 10 U.S.C. § 802(a).

That leaves only Whatley's constitutional claims. First, Whatley's attempt to invoke 42 U.S.C. §§ 1985 and 1986 is unavailing. Whatley does not specify which subsection of Section 1985 provides the basis for his claim, but only Section 1985(3) has any plausible application under the facts alleged. To state a viable claim under Section 1985(3) that defendants conspired to deprive him of his civil rights, Whatley must have alleged:

> (1) a conspiracy involving two or more persons that is motivated by racial or other class-based discriminatory animus;
>
> (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and
>
> (3) an act in furtherance of the conspiracy which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Moniz v. Cox*, 512 F. App'x 495, 499-500 (6th Cir. 2013) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) and *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)). Whatley's Complaint makes no allegation of discrimination, let alone sets forth the particularized allegations of conspiracy necessary to state a claim under § 1985(3). And Whatley did not allege a conspiracy motivated by race or other class-based animus. *See Vakilian v. Shaw*, 335 F.3d 509, 519 (6th Cir. 2003). This claim must therefore be dismissed. *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 346 (6th Cir. 2014). And since Whatley "has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990).

Whatley next makes unexplained references to four Articles of the Constitution of the United States. First, he invokes "Article I Section 10 – Payment of Debts." (*See* Doc. # 1 at 17). The pertinent section provides that "No State shall … make any Thing but gold

9

and silver Coin a Tender in Payment of Debts . . . ." U.S. Const. art. I, § 10 cl. 1.  Second, Whatley references "Article III Section 2 – Trial by Jury."  That section states that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ."  U.S. Const. art. III, § 2, cl. 3.  Third, he purports to assert a claim based upon "Article V Section 4 – Republican Government."  The actual provision is in Article IV, not Article V, and provides that "[t]he United States shall guarantee to every state in this union a republican form of government . . . ."  U.S. Const. Art. IV, § 4.  Fourth, Whatley refers to "Article VI – Oaths Supremacy."  The Supremacy Clause provides that "the judges in every state shall be bound" by federal laws and the Constitution and that state enactments are subordinate to federal laws.  The Oaths Clause provides, in pertinent part, that "all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution."  U.S. Const. Art. VI, § 4.

As a threshold matter, Whatley makes no allegations which indicate that any of the referenced provisions have been violated.  He does not allege that Kentucky has minted its own currency; that he was criminally tried without a jury; that the federal government has failed to establish and maintain a Republican form of government; that the Kentucky legislature or its judges have applied a state law to him that conflicts with federal law; or that the presiding judge of the Kenton Circuit Court did not take her oath of office.

Apart from pleading insufficiency, courts have consistently rejected efforts to assert claims under the referenced sections.  *See Ward v. Cooper*, No. 23-CV-06167-JSC, 2024 WL 819564, at *4 (N.D. Cal. Feb. 27, 2024) (collecting cases holding that no cause of action exists under Payment of Debts Clause); *Allen v. Lindsay*, No. 5:21-CV-05098, 2021 WL 3074420, at *7 (W.D. Ark. June 30, 2021), *report and recommendation adopted*, 2021

WL 3074180 (W.D. Ark. July 20, 2021) (same); *Baker v. Carr*, 369 U.S. 186, 217-27 (1962) (claims based purely upon Guaranty Clause present nonjusticiable political questions not cognizable under Section 1983); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) ("the Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action.") (cleaned up); *Davis v. Smith*, No. CV 3:21-135, 2022 WL 20304584, at *3 (W.D. Pa. July 22, 2022), *report and recommendation adopted*, 2023 WL 4405811 (W.D. Pa. July 7, 2023) (dismissing claim under Oath Clause for failure to state a claim); *Edwards v. Edwards*, No. 4:23-CV-4106-LLP, 2023 WL 7305026, at *8 (D.S.D. Nov. 6, 2023) (dismissing claims under the Supremacy Clause, the Oath Clause, and the Payment of Debts Clause because they "do not create a personal cause of action"). The Court will therefore dismiss these claims with prejudice.

That leaves only Whatley's Section 1983 claims arising under the Bill of Rights. But before parsing those, the Court will dismiss certain parties from this action. Whatley's Complaint – which asserts dozens of claims against a handful of defendants arising out of disparate events occurring over a seven-year period – plainly runs afoul of the rules of permissive joinder. Rule 18 of the Federal Rules of Civil Procedure governs the joinder of claims. Rule 18(a) states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Where, as here, a plaintiff attempts to join claims against multiple defendants, Rule 20(a) provides the governing rule:

> (2) Persons … may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

11

>       transaction, occurrence, or series of transactions or occurrences; and
>
> (B)   any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) establishes that a defendant cannot be joined in an action if the claims asserted against him or her do not arise from the same event or course of events or which do not share common factual grounds or legal bases with the claims asserted against the other defendants. *Wilson v. Bruce*, 400 F. App'x 106, 108 (7th Cir. 2010). Regarding the interaction between these two rules, the Seventh Circuit has explained that:

> A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot. Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions. See Fed. R. Civ. P. 18, 20; *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). (To be precise: a plaintiff may put in one complaint every claim of any kind against a single defendant, per Rule 18(a), but a complaint may present claim # 1 against Defendant A, and claim # 2 against Defendant B, only if both claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." Rule 20(a)(1)(A).

*Wheeler v. Wexford Health Sources, Inc.*, 689 F. 3d 680, 683 (7th Cir. 2012).

Here, some of Whatley's claims arise from the criminal prosecution against him, while others relate to the conditions of his confinement at KCDC. At a minimum, these two sets of claims are unrelated to one another and cannot be pursued in a single case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (holding that "A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner . . . Unrelated claims against different defendants belong in different suits, not only to prevent

12

the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees.").[3]

The jail conditions claims against KCDC, Carrie Ray, Mark Fields, James Arrowwood, and/or Rob Sanders and Heather Humble will therefore be dropped from this case. The dismissal is without prejudice, permitting Whatley to pursue claims against those defendants in a separate case if he chooses to do so. *Cf. Vermillion v. Levenhagen*, 604 F. App'x 508, 512-13 (7th Cir. 2015) (even where claims or defendants are properly joined, Rule 21 authorizes district court to add or drop a party or to sever a particular claim to avoid undue delay, expense, confusion, or prejudice); *Alvarado v. City of Los Angeles*, 720 F. App'x 889, 904 (9th Cir. 2018) (same); *Berkshire v. Payton*, No. 1:21-CV-689, 2022 WL 575186, at *1 (W.D. Mich. Feb. 25, 2022) (same).

---

[3] Even if the Court chose not to drop these claims, it would dismiss them without prejudice on grounds of pleading insufficiency. For example, Whatley alleges without explanation that defendants Heather Humble and Rob Sanders placed a "bill of attainer (*sic*)" on him. (Doc. # 1 at 12, 15). Disregarding for the moment that a bill of attainder is a legislative enactment rather than an act of an individual, Whatley provides no factual basis for this claim. And Whatley merely references an expansive list of sources of law as collective grounds for all of his claims, *see* (Doc. # 1 at 16-18), but he makes no effort to plead facts indicating which of them were actually violated, when, how, and by whom. Rule 8(a) of the Federal Rules of Civil Procedure requires more than pleading by laundry list. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation.") (cleaned up). After all, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must tie his factual allegations to a discernible legal claim against each named defendant: federal notice pleading requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him. *Sampson v. Garrett*, 917 F. 3d 880, 882 (6th Cir. 2019) ("[e]ven a pro se prisoner must link his allegations to material facts … and indicate what each defendant did to violate his rights …"); *Reilly v. Vadlamudi*, 680 F. 3d 617, 626 (6th Cir. 2012) ("Plaintiff must state a plausible constitutional violation against each individual defendant - the collective acts of defendants cannot be ascribed to each individual defendant."). These deficiencies in Whatley's Complaint alone would warrant dismissal without prejudice.

13

What remains then are Whatley's Section 1983 claims arising out of the criminal prosecution against him. First, Whatley complains that Judge Kathy Lape, who presides over the three criminal prosecutions against him, conspired to kidnap him and hold him for ransom by denying his request for bond. He further complains that in these cases Judge Lape: (1) refused to recognize "my tribal court ordered name correction [] to Pairi Omari Will El Rey"; (2) did not explain to him the nature of the charges against him; (3) presides over cases as a judge while maintaining her license to practice law; (4) ordered a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975) when he requested to represent himself; (5) has disregarded several motions he filed *pro se*; and (6) interrupts him during court hearings. (Doc. # 1 at 2-4).

The claims against Judge Lape will be dismissed with prejudice as barred by absolute judicial immunity. The doctrine bars the assertion of a claim against a judge arising out of acts performed as an integral part of the judicial process. *Pierson v. Ray*, 386 U.S. 547, 553-55 (1967); *Forrester v. White*, 484 U.S. 219, 225 (1988) (noting that absolute judicial immunity "insulates judges from vexatious actions prosecuted by disgruntled litigants.") (cleaned up). And because the protection provides immunity not just from damages but from suit itself, it is "not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pierson*, 386 U.S. at 555-56 (noting that the doctrine applies even when the plaintiff claims that the judge acted in a corrupt or malicious manner, or in excess of his authority). Only when a judge acts "in the clear absence of jurisdiction" will judicial immunity not apply. *Mireles*, 502 U.S. at 11-12. Here, the actions described by Whatley were plainly taken by Judge Lape during

courtroom hearings in her role as the presiding judge, and thus fall squarely within the scope of judicial immunity.  *See Huffer v. Bogen*, 503 F. App'x 455, 459 (6th Cir. 2012) ("The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.") (cleaned up).  The claims against Judge Lape will therefore be dismissed with prejudice.[4]

Second, Whatley contends that Dennis Alerding, a private attorney he retained and who represented him in the criminal proceedings until his withdrawal on February 6, 2024, (a) convinced him to plead guilty to a "victimless" crime; (b) coerced him to pay his fees for representation even though Alerding had "done nothing"; (c) executed documents on his behalf without consulting him; and (d) forged unidentified documents.  (Doc. # 1 at 2, 5-6).  Whatley also asserts that retained counsel Wesley Williams, who represented him in the criminal proceedings until his withdrawal on March 17, 2019, (a) was too friendly with prosecutors; (b) forged his initials on a waiver of indictment; and (c) withdrew from representation after he insisted that Williams file a motion requiring Judge Lape to provide a copy of her "Oath of Office."  (Doc. # 1 at 2, 6-7).

---

[4]   Whatley does not clearly identify what positions are held by defendants Heather Humble, Rob Sanders, and Joseph Hill.  He alleges, without explanation, that they placed a "bill of attainer (*sic*)" on him and/or conspired to hold him accountable for the actions of "legal entity all caps (PERRY LEE WHATLEY)."  *See* (Doc. # 1 at 12, 15).  State court records indicate that at least Humble and Hill act as prosecutors in Whatley's criminal cases.  Pursuant to FRE 201(b) & (c), the Court takes judicial notice that Rob Sanders is the elected Commonwealth's Attorney for Kenton Couty, Kentucky.  In addition to pleading and legal insufficiencies, Whatley's claims against these persons are subject to dismissal with prejudice because prosecutors are entitled to absolute quasi-judicial immunity for actions performed in furtherance of that role.  *Cf. Imbler v. Pachtman*, 424 U.S. 409 (1976); *Adams v. Hanson*, 656 F.3d 397, 401-03 (6th Cir. 2011).

These claims must also be dismissed with prejudice: a private attorney does not act on behalf of the state when representing a defendant in criminal proceedings, and is therefore not subject to liability under Section 1983:

> A lawyer representing a client is not, by virtue of being an officer of the court, a state actor "under color of state law" within the meaning of § 1983. In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interests of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

*Polk County v. Dodson*, 454 U.S. 312, 318-19 (1981). *See also Parker v. W. Carroll Special Sch. Dist.*, No. 19-5456, 2020 WL 2070281, at *1 (6th Cir. Apr. 1, 2020) ("Attorney Steven West is not subject to suit under § 1983 because, despite acting as Parker's attorney in a criminal matter, he is a private party not acting under color of state law.") (*citing Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009)).

Third, Whatley complains that Douglas Ullrich, an officer of the Covington Police Department, (a) interfered with his "freedom of travel" as an "Ohio Indigenous American National" when he pulled Whatley's vehicle over; (b) "unlawfully" searched his vehicle because he is "not a 14th Amendment Citizen"; (c) fabricated evidence ("a small baggie of something") after Ullrich found "a cell phone and some pipe with unknown residue" in the passenger area of his car; and (d) "kidnapped" him by placing him under arrest and charging him with possession of drugs and paraphernalia. (Doc. # 1 at 2, 7-8). As currently drafted, Whatley's first, second, and fourth claims against Officer Ullrich will be dismissed without prejudice for failure to state a claim: Whatley fails to identify a plausible constitutional basis for his asserted "right to travel" or his claimed immunity from search

16

or arrest because he is "not a 14th Amendment Citizen." Whatley's third claim - that Ullrich fabricated evidence - will remain.

However, the Court will stay this action pending resolution of the state criminal proceedings against Whatley. Generally federal courts should not exercise jurisdiction over a civil matter if doing so might interfere with an ongoing state criminal prosecution. *Younger v. Harris*, 401 U.S. 37, 44 (1971); *see also Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986) (noting that the rule is "designed to permit state courts to try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court."). Abstention is appropriate if: (1) there are ongoing state judicial proceedings; (2) those proceedings implicate important state interests; and (3) they afford the plaintiff an adequate opportunity to raise constitutional concerns. *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006). The criminal charges against Whatley remain pending, and he has not established that the state court would not give full and fair consideration to his constitutional claims as part of a defense to the charges against him. Due respect for the legal process in state courts precludes any presumption that state courts, whether at the trial or appellate level, are unable or unwilling to safeguard federal constitutional rights. *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982). Nothing in Whatley's complaint indicates the presence of any factor which "render[s] the state court incapable of fairly and fully adjudicating the federal issues before it" as required to satisfy the "extraordinary circumstances" exception. *See Kugler v. Helfant,* 421 U.S. 117, 124 (1975). *Younger* abstention is therefore warranted and appropriate with respect to Whatley's claims. *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th

Cir. 2001) (*Younger* abstention counsels federal court to refrain from adjudicating matter otherwise properly before it in deference to ongoing state criminal proceedings).

The Court will therefore stay any further proceedings in this matter until the state criminal charges against Whatley are resolved, one way or another. To ensure that this case promptly resumes once the state proceedings are concluded, Whatley must – upon peril of dismissal – file a report every sixty days updating the Court on the status of those proceedings.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

1. The Court **DISMISSES WITH PREJUDICE** Whatley's claims asserted **against all Defendants** under Titles 10 and 18 of the United States Code; the Universal Declaration of Human Rights; the United Nations Universal Declaration on the Rights of Indigenous People Act; the Uniform Commercial Code; 27 C.F.R. 72.11; 8 U.S.C. § 1408; the Expatriation Act of 1868; the Treaty of Washington of 1866; the Treaty of Camp Holmes of 1835; Public Law 73-10; the Clearfield doctrine; 42 U.S.C. § 1985, 1986; the "Payment of Debts" clause, U.S. Const. art. I, § 10 cl. 1; the "Republican Government" clause, U.S. Const. Art. IV, § 4; the "Supremacy Clause", U.S. Const. Art. VI, § 4; and the "Oath Clause", U.S. Const. Art. VI, § 4.

2. The Court **DISMISSES WITH PREJUDICE** Whatley's claims asserted against Defendants Judge Kathy Lape, Dennis Alerding, and Wesley Williams.

3. The Court **DISMISSES WITHOUT PREJUDICE** Whatley's claims asserted against Defendants Kenton County Detention Center, Carrie Ray, Mark Fields, James Arrowwood, Rob Sanders and Heather Humble.

4. The Court **DISMISSES WITHOUT PREJUDICE** Whatley's claims that defendant Douglas Ullrich interfered with Whatley's freedom of travel, unlawfully searched his vehicle, and "kidnapped" him by arrest.

5. The Court **ABSTAINS** from further consideration of Whatley's claim that defendant Douglas Ullrich fabricated evidence and **STAYS** this matter pending resolution of the criminal charges pending against Whatley in *Commonwealth v. Whatley*, No. 18-CR-00035 (Kenton Cir. Ct. 2018).

6. **On or before July 12, 2024**, and every sixty (60) days thereafter, Whatley shall **FILE** in this Court a Report advising the Court of the status of his state criminal case.

7. **Failure to file a timely and adequate Report will result in the entry of an Order to Show Cause why this action should not be dismissed for failure to prosecute and failure to comply with an Order of the Court.**

This 20th day of May, 2024.

Signed By:
*David L. Bunning*   DB
United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\2-24-77-DLB Whatley Memorandum.docx